Richard A. LETIZIA,
Plaintiff-Appellant,

v.

PRUDENTIAL BACHE SECURITIES, INC., a Delaware corporation; Peter Kwee; Melvin A. Selbst; and Mrs. Melvin A. Selbst, Defendants-Appellees.

No. 85–2278.

United States Court of Appeals,
Ninth Circuit.

Submitted May 15, 1986 *.

Submission Deferred June 3, 1986.

Resubmitted Oct. 21, 1986 **.

Decided Oct. 21, 1986.

---

* Appellant asked that we waive oral argument in this case, a motion appellee opposed. As our order of May 5, 1986, indicates, the panel unanimously found this case appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 3(f).

** The case is hereby ordered resubmitted for decision.

Richard G. Himelrick, Hart, Himelrick & Gulinson, Phoenix, Ariz., for plaintiff-appellant.

Robert L. Palmer, Martori, Meyer, Hendricks & Victor, Phoenix, Ariz., for defendants-appellees.

Before NELSON, CANBY and JOHN T. NOONAN, Jr., Circuit Judges.

CANBY, Circuit Judge:

Richard Letizia appeals the district court's dismissal of his action for fraud and violation of the securities laws against Prudential Bache Securities and its employees Peter Kwee and Melvin Selbst. In dismissing the complaint, the district court also granted Bache's motion to compel arbitration of the dispute pursuant to the brokerage agreement between Bache and Letizia.

In May 1982, Letizia opened a securities account with Bache. At that time, he signed the firm's standard Customer Agreement, which provided, in part, for the arbitration of any dispute arising out of or relating to Letizia's securities account.

Letizia invested about $8000 through Bache. He claims that his account executive, Kwee, and Kwee's supervisor, Selbst, churned his account and traded securities on his behalf without regard to his investment objectives. By May 1983, he claims that his losses had totalled more than $5000 and that he had paid nearly $2200 in commissions.

Letizia first filed an action in Arizona Superior Court in November 1983, alleging state statutory and common law claims. Defendants notified Letizia that they wished to arbitrate the dispute, pursuant to the Customer Agreement. In response, Letizia dismissed his state action and refiled in federal court, alleging violations of sections 12(2) and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77l(2), 77q(a), and section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). His original state law claims and some new state counts were added as pendent claims.

Defendants answered the federal complaint without making any demand for arbitration. The parties then proceeded through discovery before defendants first mentioned arbitration. In October 1984, they argued that discovery had shown the state law claims to be severable from the federal claims. They therefore sought dismissal of the state claims and an order compelling their arbitration. The district court denied the motion and set the case for trial on July 16, 1985.

On March 4, 1985, the Supreme Court rendered its decision in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), rejecting the so-called "intertwining doctrine," which had been the rule in this and several other circuits. Under the intertwining doctrine, a party could not compel arbitration of arbitrable claims if they were factually intertwined with nonarbitrable claims. Claims under section 12(2) had been held nonarbitrable in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

After *Byrd*, defendants asked the district court to reconsider their motion to compel arbitration. In addition to urging arbitrability of the state law claims, they argued that, under *Byrd*, Letizia's remaining federal claims[1] were now arbitrable. Letizia contended that defendants had waived their right to compel arbitration, that the arbitration clause was unenforceable as an adhesionary contract term, that Bache's nonsignatory employees were not covered by the agreement, and that the federal claims were not arbitrable. Letizia also sought leave to amend his complaint to

1. As part of the pretrial order, plaintiff had stipulated to dismissal of his section 12(2) claim.

attack the validity of the arbitration clause; he sought a jury trial on that issue. The district court, without express analysis or findings, granted defendants' motion to compel arbitration, denied Letizia's motions and dismissed the action. Letizia appeals.

## DISCUSSION

### I. *Waiver of Arbitration*

■ Letizia argues that defendants waived any right they may have had to arbitrate the dispute because they did not seek arbitration from the earliest point in the federal litigation. Arbitration, Letizia argues, must be asserted as an affirmative defense when a defendant first answers a complaint. *See* Fed.R.Civ.P. 8(c). It is undisputed that defendants did not seek arbitration until after the close of discovery, nine months after their answer was filed. Defendants reply, however, that they did not seek arbitration initially because such a move was futile under the then-prevailing law in this circuit.

Under facts quite similar to this case, we recently held that there had been no waiver of the right to arbitrate. *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691 (9th Cir.1986). We stated in *Fisher* that, although it is certainly possible to waive contractual rights to arbitration, such waivers are not favored. *Id.* at 694. We stated, "A party seeking to prove such a waiver must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.*

As our *Fisher* decision makes clear, there could be no waiver here because there was no existing right to arbitration.

After our decision in *DeLancie v. Birr, Wilson & Co.*, 648 F.2d 1255, 1259 n. 4 (9th Cir.1981), the intertwining doctrine was, for all practical purposes, the law of this circuit. *See Fisher*, 791 F.2d at 694–95. As in *Fisher*, defendants here correctly perceived that a motion to compel arbitration would have been futile because of the apparent intertwining of arbitrable and nonarbitrable claims.[2] *See id.* at 695. Clearly, then, there was no existing right to arbitrate when this suit was filed. Thus, there could have been no waiver. *See id.* at 697.[3]

### II. *Applicability to the Individual Defendants*

■ Letizia argues that, even if Bache may submit this dispute to arbitration, the individual defendants, who are nonsignatories to the Customer Agreement, may not. The question is one of first impression in this circuit, and it is reviewed *de novo* as a question of law. Because the issue involves the arbitrability of a dispute, it is controlled by application of federal substantive law rather than state law. *Bayma v. Smith Barney, Harris Upham & Co.*, 784 F.2d 1023, 1025 (9th Cir.1986).

Other circuits have held consistently that nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles. *See, e.g., Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923, 938 (3d Cir.1985); *In re Oil Spill by Amoco Cadiz*, 659 F.2d 789, 795–96 (7th Cir.1981); *Interocean Shipping Co. v. National Shipping & Trading Corp.*, 523 F.2d 527, 539 (2d Cir. 1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976); *cf. Alyeska Pipeline Serv. Co. v. International Bhd. of Teamsters*, 557 F.2d 1263, 1267 (9th Cir.

---

2. Any doubts the parties may have had concerning our adherence to the intertwining doctrine were absolutely erased only three weeks after Bache answered the complaint in this case when we announced our decision in *Byrd v. Dean Witter Reynolds, Inc.*, 726 F.2d 552 (9th Cir.1984), *rev'd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

3. Defendants actively pursued their right to arbitrate as soon as they believed, in good faith,

that they had such a right. Once discovery indicated that the arbitrable issues might be severable, defendants sought arbitration, although their request was denied.

Moreover, in light of our conclusion that some of Letizia's claims are nonarbitrable, *see infra* Part V, Letizia has failed to show that he was prejudiced by his pretrial litigation preparation.

1977) (local union bound by arbitration clause in its collective bargaining agreement even though it did not represent the particular employees involved in picketing activities at the time the agreement was signed). The rule is an outgrowth of the strong federal policy favoring arbitration. *See generally Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, —— U.S. ——, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985).

Several courts have addressed the problem of nonsignatories in cases factually similar to this one. In virtually every case, they have held the brokerage firm employees bound by the arbitration agreement. *See, e.g., Barrowclough*, 752 F.2d at 938; *Brown v. Dean Witter Reynolds, Inc.*, 601 F.Supp. 641, 644 (S.D.Fla.1985); *see also Hartford Fin. Sys., Inc. v. Florida Software Serv., Inc.*, 550 F.Supp. 1079, 1086 (D.Me.1982), *app. dismissed*, 712 F.2d 724 (1st Cir.1983); *but see Bengiovi v. Prudential-Bache Securities, Inc.*, [1984–85 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,012, at 91,013, 91,017 n. 9 (D.D.C.1985) (holding employee was not entitled to rely on the arbitration agreement but citing no authority). We find the majority view persuasive. All of the individual defendants' allegedly wrongful acts related to their handling of Letizia's securities account. Bache has clearly indicated its intention to protect its employees through its Customer Agreement. We conclude that the arbitration clause is applicable to Kwee and Selbst.

**4.** Defendants also argue that Letizia's proposed amendment to his complaint constituted a generalized claim that the Customer Agreement was fraudulently induced. Under *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967), these claims cannot be considered by a federal court. Instead, they are treated as any other dispute under the contract and must be referred to arbitration. *See also Schacht v. Beacon Ins. Co.*, 742 F.2d 386, 389–90 (7th Cir.1984); *Merrill Lynch, Pierce, Fenner & Smith v. Haydu*, 637 F.2d 391, 398 (5th Cir.1981). Only a claim that the arbitration clause itself was independently induced by fraud can be brought before the court under 9 U.S.C. § 4.

Although defendants' statement of the law is accurate, we cannot agree that Letizia's pro-

### III. *Validity of the Arbitration Clause*

■ Letizia next argues that the district court erred in refusing to permit him to amend his complaint to allege that the arbitration agreement was invalid as an adhesionary term and as a product of fraud and abuse of fiduciary relationship. Letizia sought a jury trial on the arbitration clause's validity. Denial of a motion to amend is reviewed here for an abuse of discretion. *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313–14 (9th Cir.1984). Our recent decision in *Bayma v. Smith Barney*, 784 F.2d at 1025, makes clear that the validity of the arbitration agreement is a question of federal and not state law.

■ Under 9 U.S.C. § 4, district courts are to proceed summarily to trial of the issue whenever the existence of a valid arbitration clause is in question. It is true that Letizia's new claims appear to be little more than bare allegations. Letizia admits that he never read the contract and that arbitration terms like the one here are not *per se* unconscionable. Moreover, he presents here only a generalized attack on the use of form contracts without specific facts that indicate overreaching or abuse by defendants. Furthermore, his argument of fraud and abuse of fiduciary duty presupposes the existence a fiduciary relationship from the first time Letizia spoke with Kwee, a contention for which he offers no legal support.[4]

posed amendment is designed to impugn the entire agreement. Although some ambiguous language in the proposed amendment could be read that way, it can also be read to argue that only the arbitration agreement is invalid. Indeed, the record shows that defendants argued before the district court that Letizia's attack was directed to the arbitration clause.

Distinguishing between attacks on the underlying agreement and attacks on the arbitration clause can be a "puzzling" problem. *See Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 868–69 (7th Cir.1985). Without exploring the problem in great detail, we note simply that district courts must examine a party's attack in light of all of the circumstances. The determination should not turn on which party wins the game of more artful pleading. Instead, the court should attempt to ascertain the party's reason-

We also recognize that doubts should generally be resolved in favor of arbitration, *see, e.g., Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), and that attacks on the validity of arbitration agreements must be supported by some factual showing, *Mitsubishi Motors,* 105 S.Ct. at 3357. Nonetheless, we believe Letizia should have been given the chance to make his case.

Under Fed.R.Civ.P. 15(a), leave to amend should be freely granted when justice requires. Although leave is properly denied when the amendment is "futile" or legally insufficient to support the requested relief, *Jones v. Community Redevelopment Agency,* 733 F.2d 646, 650 (9th Cir.1984), we conclude that this was not the case here.

It was premature for the district court to require a factual showing from Letizia. Letizia was asking only to amend his complaint. After the amendment, Letizia certainly would be required to produce more than the mere allegations we have before us; such generalized attacks will not suffice. Letizia had been expecting to go to trial on the merits of his case; it is not surprising that he did not develop fully any proof he might have that the arbitration agreement is unenforceable. We cannot say that Letizia could develop *no* set of facts under his proposed amended complaint that would entitle him to relief from the arbitration agreement. Accordingly, we must conclude that the district court abused its discretion in denying Letizia the opportunity to amend his complaint and to prove his allegations concerning the enforceability of the arbitration agreement.[5]

## IV. Arbitrability of the Federal Claims

■ Finally, Letizia challenges the district court's determination that his federal securities claims were arbitrable. The arbitrability of a claim is a question of law, reviewed by this court *de novo. Marchese v. Shearson Hayden Stone, Inc.,* 734 F.2d 414, 423 (9th Cir.1984).

### A. Claims under Section 10(b) of the 1934 Act

The arbitrability of section 10(b) claims was the primary issue before this court in *Conover v. Dean Witter Reynolds, Inc.,* 794 F.2d 520 (9th Cir.1986). In *Conover,* we held that claims under section 10(b) are not arbitrable. 794 F.2d at 522–27. We adhere to that recent decision; the district court erred when it ruled otherwise.

### B. Claims under Section 17(a) of the 1933 Act

■ Because of the "minimal differences between § 17(a) of the 1933 Act and § 10(b) of the 1934 Act," *Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808, 815 (9th Cir.1981), we conclude that the *Conover* decision regarding the arbitrability of section 10(b) claims should also control the question concerning section 17(a) claims. Thus, we hold that claims under section 17(a) of the Securities Act of 1933 are not subject to arbitration.

## CONCLUSION

There was no waiver of any right to arbitrate here because any request by de-

able intent in light of the procedural posture of the case, prior pleadings, representations of the parties and other case-specific factors in addition to the strong federal policy favoring arbitration.

Here, Letizia intended to attack only the arbitration clause. Before *defendants' request for* arbitration, Letizia never denied that a contract existed between defendants and himself, and he never attacked any terms of that contract. Nor does his proposed amendment, fairly read, attack the underlying agreement between the parties. Instead, it essentially asserts that defendants imposed upon Letizia an agreement to waive his right to litigate a potential dispute

with defendants without disclosures or any real opportunity to bargain. We think this is an attack on the arbitration clause within the meaning of 9 U.S.C. § 4.

5. Our ruling makes it unnecessary to resolve Letizia's question whether the district court's dismissal of his action was with or without prejudice. The dismissal clearly contemplated arbitration. When arbitration is ordered, a stay, rather than a dismissal, of the federal litigation is appropriate. *See* 9 U.S.C. § 3 (1982).

fendants for arbitration when this proceeding commenced would have been futile. Nonetheless, we conclude that it was improper for the district court to order arbitration when it did. Letizia should have been permitted an opportunity to amend his complaint and show the arbitration agreement unenforceable. To the extent that the agreement is found enforceable, it applies equally to Bache and the nonsignatory employee defendants. Finally, Letizia's claims under the federal securities laws are not arbitrable.

The judgment of the district court is reversed and the cause is remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.